UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

|  |  |
|---|---|
| CHARLENE HULET JOHNSON ROYCE, an individual,<br><br>      Plaintiff,<br><br>      v.<br><br>SPEARS MANUFACTURING COMPANY, a corporation registered and doing business in the State of Idaho,<br><br>      Defendant. | Case No. 1:23-cv-00225-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

Before the Court is Spears Manufacturing Company's motion for summary judgment (Dkt. 27). For the reasons discussed below, the Court will grant the motion.

## BACKGROUND

Until June 2022, Charlene Royce worked as a "stock handler" at a Spears Manufacturing facility in Jerome, Idaho. *Pl.'s Stmt. of Facts* at 2, Dkt. 31-1; *Def. Stmt. of Facts* at ¶¶ 4, 37, Dkt. 27-2. The Jerome facility produces, assembles, and ships thermoplastic pipe fittings, valves, and similar products. *Id.* at ¶ 1. Ms. Royce

began working for Spears Manufacturing in 2000 when she was hired as stock handler in the warehouse department where she worked until 2007. *Id.* at ¶ 7; *Pl.'s Stmt. of Facts* at 2, Dkt. 31-1. She returned in 2008 as an inventory clerk for the assembly/barcode department. *Grodan Decl*., Ex. B. at 23:10–18, Dkt. 27-3; *Royce Decl.* at ¶¶ 6–8, Dkt. 31-2. When she was hired in 2008, Spears Manufacturing indicated that she would work exclusively in the barcode department and would not rotate between barcode and assembly. *Grodan Decl.*, Ex. A at 41:1–12, Dkt. 27-3.

In early 2021, while working at Spears Manufacturing Ms. Royce felt her right shoulder "pop" when she was moving boxes between pallets. *Royce Decl.* at ¶ 15, Dkt. 31-2. Despite some pain, she returned to work and did not see a doctor until a few months later. *Id.* at ¶¶ 16–17. In March of that year, Spears Manufacturing informed Ms. Royce that she would need to start rotating between the assembly and barcode sides of the department. *Grodan Decl.*, Ex. A at 59:9–60:21; 89:23–90:5, Dkt. 27-3. This rotation started April 1, 2021. *Id.* Working in assembly required more lifting than working in barcode required and after a few weeks in assembly, Ms. Royce was in too much pain to continue working. *Id.* at 90:6–19. She informed her supervisor that she could no longer continue lifting heavy boxes due to her injury. *Id.* at 59:9–60:21. She was put on "light duty" and

went to see a physician. *Id.*

Ms. Royce was diagnosed with a torn rotator cuff and received surgery in October 2021. *Royce Decl.*, Ex. H, Dkt. 31-2; *Id.* at ¶¶ 24–25. Both before and after surgery Ms. Royce's physician placed weight restrictions on the amount she could lift. *Id.* at ¶ 22. During this period, Spears Manufacturing did not permit her to operate a forklift and Ms. Royce continued to work only light duty jobs. *Id.* at ¶¶ 22, 24–25; *Grodan Decl.*, Ex. A at 60:22–61:4, Dkt. 27-3. In June 2022, Ms. Royce's physician concluded she would have permanent limitations on her injured arm, including "no pushing or pulling over 15 pounds. There are some differentials in terms of when the weight breaks. 15 pounds is at waist height, 10 pounds waist to chest, and 5 pounds above the shoulder. She can only carry for 25 feet." *Id.*, Ex. F, Dkt. 32.

As a result of these limitations, Spears Manufacturing determined that Ms. Royce was unable to return to her job as a stock handler. *Royce Decl.* at ¶¶ 29–34, Dkt. 31-2. Spears Manufacturing did not have any other available positions that would comply with her weight restrictions. *Kirkelie Decl.*, Ex. E, Dkt. 27-7. Soon thereafter, Spears Manufacturing terminated her employment. *Royce Decl.* at ¶ 38, Dkt. 31-2. Following her termination, Ms. Royce filed a claim with the Idaho Human Rights Commission, which was denied. She then filed the present action,

alleging disability discrimination in violation of the Americans with Disabilities Act and the Idaho Human Rights Act. *Compl.*, Dkt. 1. Spears Manufacturing now moves for summary judgment on all claims against it.

## LEGAL STANDARD

Summary judgment is appropriate where a party can show that, as to any claim or defense, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). One of the principal purposes of summary judgment "is to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24 (1986). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). There must be a genuine dispute as to any *material* fact—a fact "that may affect the outcome of the case." *Id.* at 248. "Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc). In evaluating whether the moving party has met this burden, the

Court must view the evidence in the light most favorable to the non-moving party and the Court must not make credibility findings. *Id.* at 255. Direct testimony of the non-movant must be believed, however implausible. *Leslie v. Grupo ICA*, 198 F.3d 1152, 1159 (9th Cir. 1999).

Once the moving party has met its burden, the non-moving party carries the burden to present evidence showing there is a genuine issue for trial. *Celotex*, 477 U.S. at 323. The non-moving party must go beyond the pleadings and show through "affidavits, or by the depositions, answers to interrogatories, or admissions on file" that a genuine dispute of material fact exists. *Id.* at 324.

## ANALYSIS

Ms. Royce alleges Spears Manufacturing discriminated against her based on her disability in violation of the ADA and Idaho Human Rights Act. To support a prima facie case of disability discrimination, Ms. Royce must show "(1) that she is disabled within the meaning of the ADA;" (2) that she is qualified individual; and "(3) that the employer terminated her because of her disability." *Broussard v. Univ. of Cal., at Berkeley*, 192 F.3d 1252, 1255–56 (9th Cir. 1999) (quoting *Kennedy v.*

*Applause, Inc.*, 90 F.3d 1477, 1481 (9th Cir. 1996) (cleaned up)).[1] Spears

Manufacturing's motion focuses only on the second of the three elements, arguing

that Ms. Royce cannot show she is a qualified individual.

A "qualified individual" is someone "who, with or without reasonable

accommodation, can perform the essential functions of the employment position

that such individual holds or desires." 42 U.S.C. § 12111(8). The Court will

undertake this analysis in two steps. It will first consider whether there is any

dispute regarding the essential functions of a stock handler before evaluating

whether there is any dispute that Ms. Royce can perform those essential functions

with or without accommodation.

### A.    Essential Functions

The parties disagree about what functions are "essential functions" of the

stock handler position. Spears Manufacturing argues the essential functions of the

position include rotating between the barcode and assembly sides of the

department and regularly lifting between 20 and 35 pounds. Ms. Royce, in

contrast, argues the only essential function of a stock handler is operating the sit-

---

[1] "Courts interpret the standards for disability under the ADA and IHRA identically. *See Foster v. Shore Club Lodge*, 908 P.2d 1228, 1232–33 (Idaho 1995). Accordingly, when the Court refers to one statute, its reference impliedly includes the other." *Ward v. Sorrento Lactalis*, 392 F. Supp. 2d 1187, 1190 n.1 (D. Idaho 2005).

down forklift.

"'Essential functions' are those 'fundamental job duties of the employment position. . . not includ[ing] marginal functions of the position.'" *Bates v. United Parcel Servs., Inc.*, 511 F.3d 974, 989 (9th Cir. 2007) (quoting 29 C.F.R. § 1630.2(n)(1)). The ADA instructs that "consideration shall be given to the employer's judgment as to what functions of a job are essential, and if an employer has prepared a written description before advertising or interviewing applicants for the job, this description shall be considered evidence." 42 U.S.C. § 12111(8). Additionally, the ADA regulations identify several non-exhaustive factors for courts to consider:

(i)    The employer's judgment as to which functions are essential;
(ii)   Written job descriptions prepared before advertising or interviewing applicants for the job;
(iii)  The amount of time spent on the job performing the function;
(iv)   The consequences of not requiring the incumbent to perform the function;
(v)    The terms of a collective bargaining agreement;
(vi)   The work experience of past incumbents in the job; and/or
(vii)  The current work experience of incumbents in similar jobs.

29 C.F.R. § 1630.2(n)(3). The employer has the burden of establishing what job functions are essential. *Samper v. Providence St. Vincent Med. Ctr.* 675 F.3d 1233, 1237 (9th Cir. 2012).

### 1.  Rotation Between Barcode and Assembly

Spears Manufacturing argues one of the essential functions of the stock handler position is rotating between the barcode and assembly sides of the department. Although this is a fact-specific determination, rotation between jobs or duties can be an essential function of a position. *See Gratzl v. Office of Chief Judges of the 12th, 18th, 119th, and 22nd Judicial Districts*, 601 F.3d 674, 679–80 (7th Cir. 2010). Considering the factors set forth in the ADA and accompanying regulations, Spears Manufacturing has presented sufficient undisputed evidence to show that rotation between barcode and assembly is an essential function of the stock handler position.

The testimony of Spears Manufacturing past and current employees, including Ms. Royce, support the company's contention that such rotation was an essential function of the position. *See Grodan Decl.* Ex. D at 254:17–257:4, Dkt. 27-3 (assembly side supervisor stating rotation is necessary); *Id.*, Ex. A at 89:23–90:5 (Royce stating when rotation started); Pl.'s Ex. 4 at 22:4–14 (Ryder stating that he rotates between barcode and assembly). As Ms. Royce points out, stock handlers have not rotated on a consistent schedule. *Pl.'s Supp. Br.* at 3, Dkt. 44. That said, when fully staffed, stock handlers appear to rotate about every two to four weeks. *Id.* at 50:23–51:13; *Grodan Decl.*, Ex. D at 257:34–258:4, Dkt. 27-3.

The consequences of not rotating stock handlers between barcode and

assembly further support the conclusion that rotation is an essential function of the position. When employees are unable to rotate, it results in increased physical load on employees working only in assembly, disruption in production when employees cannot cover both sides, and staffing inadequacies. Pl. Ex. 4 at 53:2–53:15, Dkt. 44-1 (discussing physical load of assembly); *Grodan Decl*., Ex. D at 255:10–20, Dkt. 27-3 (discussing disruption); *Id.*, Ex. B at 38:3–6 (discussing importance of rotating in warehouse department so all employees know how to do all the jobs); *Id.*, Ex. C at 143:1–24 (discussing rotation as a staffing issue).

Moreover, Ms. Royce does not point to any evidence that creates a dispute about whether rotation was an essential function. Instead, Ms. Royce emphasizes that the determination whether a function is essential is a question of fact. *See Caez-Fermaint v. State Ins. Fund Corp.*, 286 F. Supp. 3d 302, 315 (D.P.R. 2017) (finding dispute of fact as to whether rotation was essential where evidence could support either party and plaintiff pointed to evidence that she did not rotate despite employer's claim rotation was essential for 5 years). Indeed, she is correct. That said, to survive summary judgment she must point to conflicting evidence. She has not done so here. The only evidence she relies on is Ken Ryder's testimony that stock handlers have not consistently rotated between barcode and assembly since the policy went into place. Pl.'s Ex. 4 at 15:7–11, Dkt. 44-1. As the Court already

acknowledged, the inconsistency of rotation due to lack of staffing, without more, does not create a factual dispute as to whether it is an essential function of the position. The testimony from Spears Manufacturing employees indicates that when fully staffed, stock handlers rotate between barcode and assembly. *Id.* at 22:4–14; *Grodan Decl.* Ex. D at 254:17–257:4, Dkt. 27-3; *Id.*, Ex. A at 89:23–90:5.

The same is true with respect to Ms. Royce's argument that the only essential function of the position is operating the sit-down forklift. Certainly, Ms. Royce cites to significant evidence demonstrating that operating the sit-down forklift is *an* essential function of the stock handler position. *Response* at 11–14, Dkt. 31. She, however, does not point to any evidence that it is the *only* essential function of the position. Ms. Royce's conclusory statement that rotating is a marginal function of the position is, without more, insufficient to create a material dispute. Accordingly, there is no dispute that rotating between barcode and assembly is an essential function of the stock handler position.

### 2. Lifting 20-35 Pound Boxes

Spears Manufacturing has also presented undisputed evidence that the essential functions of a stock handler included lifting between 20 and 35 pounds. The job description for a stock handler in barcode and assembly outlines the duties and responsibilities of the job. *Kirkelie Decl.*, Ex. F, Dkt. 32. Relevant here, the job

description states an employee must be able "to perform moderate physical work, exerting 50 to 100 pounds of force occasionally, 20 to 50 pounds frequently, and up to 20 pounds constantly." *Id.* This description comports with the experience of current and former employees. *Grodan Decl.* Ex. A at 59:7–60:21; 77:7–15, Dkt. 27-3. When working on the assembly-side, employees estimate the boxes average somewhere between 25 and 35 pounds. *Id.*, Ex. D at 296:17–297:5; 305:20–306:13; 307:24–308:12; *Id.*, Ex. A at 123:7–124:8 (describing the need to lift boxes weighing 35 pounds); *Id.*, Ex. C at 180:18–181:9 (describing majority of boxes as weighing between 25 and 50 pounds); Pl.'s Ex. 4 at 34:1–35:4; 37:24 – 38:14, Dkt. 44-1 (describing "a lot of heavy boxes" weighing between 20 and 40 pounds but averaging about 30 pounds). This lifting and pulling is an essential function of the job because stock handlers pull down boxes, combine pallets, and lift component boxes on the table—even when operating the forklift. *Grodan Decl.*, Ex. D at 305:20–306:13; 334:14–335:23, Dkt. 27-3; *Id.*, Ex. C at 151:9–152:12 (describing necessity of lifting boxes without forklift while in assembly); Pl.'s Ex. 4 at 41:4–25, Dkt. 44-1. Even tasks such as scanning boxes require some lifting. *Id.* at 37:11–23.

Again, Ms. Royce has not pointed to any evidence to dispute that lifting boxes between 20 and 35 pounds is an essential function of the position. At most,

she has provided evidence that some boxes weigh less than 20 pounds and not every task requires lifting heavy weight. *See e.g.*, *Id.* at 37:1–16; *Grodan Decl.*, Ex. B at 48:10–18, 50:4–11, Dkt. 27-3. That said, this evidence does not create a dispute about whether lifting between 20 and 35 pounds is essential. Nor do her conclusory statements that these duties were marginal or that the forklift is the only essential function of the job. As such, there is no dispute that rotating between barcode and assembly as well as lifting boxes between 20 and 35 pounds are essential functions of a stock handler.

### B.    Performance of Essential Functions

The next question is whether Ms. Royce is able to perform the essential functions of a stock handler with or without reasonable accommodation. A court must "consider whether the [plaintiff] can perform the job's essential function without reasonable accommodation, and then, if [she] cannot, whether [she] can do so with reasonable accommodation." *Dark v. Curry County*, 451 F.3d 1078, 1088 (9th Cir. 2006). "To avoid summary judgment, however, the plaintiff need only show that an accommodation *seems reasonable on its face*, i.e., ordinarily or in the run of cases." *Id* (internal quotation marks omitted).

Ms. Royce suggests that she can perform all of the essential functions of a stock handler without accommodation. It is plain from the record that this is not the

case. She points, largely, to the fact that she continued working for a few months after the initial injury. *See Pl.'s Statement of Facts* at 7, Dkt. 31-1 ("Dr. Wright believed that Mrs. Royce was physically qualified to return to the same work duties she had performed form January 2021–April 2021 (post injury, pre-surgery)."). Her ability to perform her job during this period is largely irrelevant because, under the ADA, "an employee must show she was qualified at the time of the adverse employment action, rather than at some earlier or later time." *See Anthony v. Trax Int'l Corp.*, 955 F.3d 1123, 1129 (9th Cir. 2020). This argument is additionally unpersuasive because rotating to the assembly side of the department prompted her to stop working and seek treatment. *Grodan Decl.*, Ex. A at 90:6–19, Dkt. 27-3. Even to the extent Ms. Royce argues that she could perform her job at the time she was terminated, that argument is belied by her own statements that she would need assistance with certain lifting tasks. *Id.* at 123:7–124:20.

Ms. Royce also suggests that she is qualified without accommodation because she continued to work for Spears Manufacturing after her surgery until her termination. *See e.g.*, *Response* at 6, Dkt. 31. This argument is unavailing because it is undisputed that Ms. Royce was on "light duty" after surgery and not performing the full range of duties required of a stock handler in bar code and assembly. *Grodan Decl.*, Ex. A at 123:7–124:20, Dkt. 27-3. Her ability to perform

the duties assigned to her while on light duty does not support the conclusion that she was able to perform all essential functions of the stock handler position. Moreover, an employer's decision to provide a temporary accommodation "does not obligate them to continue providing such an accommodation." *Phelps v. Optima Health, Inc.*, 251 F.3d 21, 26 (5th Cir. 2001). Accordingly, Ms. Royce has not pointed to any evidence that she could perform all essential functions of the position without accommodation.

In any event, Ms. Royce claims that she can perform all essential functions of a stock handler with reasonable accommodation. Ms. Royce identifies three possible accommodations: (1) not requiring her to rotate to assembly, (2) assigning her to work only on the seated forklift, and (3) have others to lift any boxes she is unable to. Ultimately, none of these proposed accommodations are reasonable on their face. It is well established that "[t]he ADA does not require an employer to exempt an employee from performing essential functions or to reallocate essential functions to other employees." *Dark*, 451 F.3d at 1089. Such exemption and reassignment are precisely what each accommodation requests.

More specifically, Ms. Royce's first accommodation would require Spears Manufacturing to restructure the stock handler position to exempt her from rotating to assembly. Instead, Ms. Royce would work exclusively on the barcode side of the

department and another employee would presumably work exclusively on the

assembly side. To support her argument that this accommodation is reasonable,

Ms. Royce cites to *Bunn v. Khoury Enterprises, Inc.*, 753 F.3d 676, 682 (7th Cir.

2014). In *Bunn*, employees at a Dairy Queen were required to rotate between

various duty stations. *Id.* at 679. The plaintiff was legally blind and unable to

perform certain duties without accommodation, so the employer trained him for a

single station and did not require him to rotate. *Id.* at 680. The plaintiff's hours

were later reduced, he resigned and sued for disability discrimination. *Id.* The

district court granted summary judgment for the employer on the plaintiff's failure

to accommodate claim. *Id.* On appeal, the Seventh Circuit affirmed. *Id.* The issue

in *Bunn*, however, was not whether the plaintiff was a qualified individual but

whether the employer reasonably accommodated his disability. *Id.* at 682. The

Seventh Circuit agreed that permitting the plaintiff to work only in one department

and not rotate was a reasonable accommodation. *Id.*

 Ms. Royce argues this conclusion supports her contention that relieving her

from rotating to assembly is a facially reasonable accommodation. *Bunn*, however,

concerned a slightly different issue than the issue presented here. In *Bunn*, the

employer did not dispute that the plaintiff was a qualified individual, so the district

court never addressed the question of whether rotation was an essential function of

his position. *Bunn v. Khoury Enterprises*, No. 1:11-cv-1540-WTL-DML, 2013 WL 2099664, at *2 (S.D. Ind. May 13, 2013). This posture limits the conclusions the Court can draw from *Bunn*. Importantly, reassignment of non-essential functions is plainly a reasonable accommodation. 29 C.F.R. § 1630.2(o)(2)(ii). If, as was presumably the case in *Bunn*, the employer did not view rotation as an essential function, then the accommodation was reasonable.

That is not the case here. Rotation is an essential function and reassignment or restructuring of essential functions is not a facially reasonable accommodation under the ADA. *See e.g. Orozco v. Lamb Weston, Inc.*, No. 2:19-cv-00060-LSU, 2020 WL 1957910, at *6 (D. Ore. Apr. 23, 2020). For instance, the Eighth Circuit determined an airline employee's request for an accommodation "to work exclusively at the ticket counter" was not reasonable because the essential functions of the job included both ticket counter and gate duties. *Moritz v. Frontier Airlines, Inc.*, 147 F.3d 784, 788 (8th Cir. 1998). The same is true with respect to Ms. Royce's request to work exclusively on the barcode side of the department. The essential functions of a stock handler include both barcode and assembly duties and requiring Spears Manufacturing to exempt Ms. Royce from performing these duties is not a reasonable accommodation.

Ms. Royce's second accommodation suffers from similar problems. She

**MEMORANDUM DECISION AND ORDER - 16**

proposes that she only operate the sit-down forklift. This accommodation would

necessarily require both the creation of a new position and the reassignment of

other essential functions. Neither is required or reasonable under the ADA. *See*

*Harden v. Delta Air Lines, Inc.*, 900 F. Supp. 493, 498 (S.D. Ga. 1995). In *Harden*,

the plaintiff was unable to perform any heavy lifting, which was an essential

function of his job. *Id.* at 498. He nonetheless claimed that a reasonable

accommodation existed because the employer could assign him to a "line" that did

not require heavy lifting and not require he rotate to lines that require lifting. *Id.*

The district court concluded that this accommodation was not reasonable on its

face because it "require[d] the employer to reassign or eliminate an essential job

function." *Id.* Just as in *Harden*, and in *Moritz*, discussed above, Ms. Royce has not

identified a reasonable accommodation by suggesting her duties be limited to the

sit-down forklift. *Id*; *Moritz*, 147 F.3d at 788 (suggesting her duties be limited to

the ticketing counter when job included ticket counter and gate duties). This

accommodation is not reasonable on its face.

Ms. Royce's final proposed accommodation is to have someone help her

whenever she needs to lift something heavy. She emphasizes that Spears

Manufacturing already has a policy that employees should ask for help lifting

boxes whenever a box is too heavy. *Grodan Decl*, Ex. C at 152:20–153:1, Dkt. 27-

3. The existence of this general policy does not make the requested accommodation facially reasonable when it would require reassignment of essential functions to other employees. *C.f.*, *Phelps*, 251 F.3d at 26. Indeed, like the other accommodations Ms. Royce proposes, this accommodation requires relieving Ms. Royce of essential functions and reallocating those duties to other employees. *See e.g.*, *E.E.O.C. v. Womble Carlyle Sandridge & Rice*, No. 1:13-CV-46, 2014 WL 2916851, at *7 (M.D.N.C. June 26, 2014) *aff'd* 616 Fed. Appx. 588, 596 (4th Cir. 2015) ("Excusing [the plaintiff] from all heavy lifting would not have been a reasonable accommodation. . . [and] requiring assistance for all tasks that involve lifting more than 20 pounds would reallocate essential functions.").

This accommodation is essentially a job-sharing arrangement, which is not a reasonable accommodation under the ADA when the shared duties are essential functions. *Phelps*, 251 F.3d at 26. In *Phelps*, the essential functions of a nurse included lifting up to 50 pounds. *Id.* Due to a back injury, the plaintiff was unable to lift that amount and, for a period, shared these duties with other nurses. *Id.* at 24. The plaintiff argued that permanently sharing lifting duties was a reasonable accommodation under the ADA. *Id.* at 26. The First Circuit disagreed, concluding that such job sharing was not a reasonable accommodation because it required allocating an essential job function, lifting, to other employees. *Id.* The same

**MEMORANDUM DECISION AND ORDER - 18**

reasoning applies here.

Finally, Ms. Royce makes a passing argument that she could have been reassigned to another position at Spears Manufacturing that only required her to drive the forklift or did not require lifting heavy boxes. *Pl. Supp. Br* at 3, Dkt. 44 (citing Pl.'s Ex. 4 at 20:18–25, Dkt. 44-1). While reassignment to a vacant position for which the employee is qualified may be a reasonable accommodation, the employee must actually identify such a position. *Hutton v. Elf Atochem N. Am., Inc.*, 273 F.3d 884, 892 (9th Cir. 2001). Ms. Royce has not done so. She claims there is a position that exclusively requires using the forklift and suggests the stock handler position was recently vacant. *Pl.'s Supp. Br* at 3, Dkt. 44. As discussed at length, Ms. Royce is not qualified for the stock handler position and nothing in the record indicates the forklift-only position, assuming it exists and Ms. Royce is qualified, was vacant around the time Ms. Royce was terminated. Accordingly, it is undisputed that Ms. Royce is not a qualified individual under the ADA and Spears Manufacturing's motion for summary judgment is granted.

## ORDER

**IT IS ORDERED that** Defendant's Motion for Summary Judgment (Dkt. 27) is **GRANTED**.



DATED: April 28, 2025

B. Lynn Winmill
U.S. District Court Judge